**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 11-02856 BRO (JCx) | Date | September 26, 2013 |
|---|---|---|---|
| Title | KWESI HUTCHFUL v. WELLS FARGO BANK, ET AL. | | |

Present: The Honorable **BEVERLY REID O'CONNELL, United States District Judge**

| Renee A. Fisher | Not Present | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter | Tape No. |

| Attorneys Present for Plaintiff: | Attorneys Present for Defendant: |
|---|---|
| Not Present | Not present |

**Proceedings:**          (IN CHAMBERS)

**ORDER RE DEFENDANT'S MOTION TO DISMISS [129]**

Pending before the Court is Defendant Wells Fargo Bank N.A.'s motion to dismiss Plaintiff's Corrected Fourth Amended Complaint ("FAC"). (Dkt. No. 129.) The FAC alleges eight causes of action: (1) promissory estoppel; (2) breach of written contract; (3) breach of implied-in-fact contract; (4) breach of the implied covenant of good faith and fair dealing; (5) fraudulent misrepresentation; (6) violations of the Real Estate Settlement Procedures Act ("RESPA"); (7) violations of the Fair Credit Reporting Act ("FCRA"); and, (8) violations of section 17200 of the California Business and Professions Code. (Dkt. No. 128.) Defendant seeks to dismiss all counts pursuant to Federal Rule of Civil Procedure 12(b)(6) based upon Plaintiff's failure to state a claim. After consideration of the papers filed in support of, and in opposition to, the instant motion, the Court deems this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; Local Rule 7–15. For the reasons detailed below, Defendant's motion to dismiss is GRANTED in PART and DENIED in PART.

## I.     BACKGROUND

Plaintiff Kwesi Hutchful owned a two-bedroom condominium in Los Angeles, CA. In 2007, Defendant Wells Fargo Bank approved a $328,000 loan to Plaintiff so he could purchase his home. (FAC at ¶ 16.) In 2008, Plaintiff's income was reduced and he was unable to afford the mortgage payments without a loan modification. (*Id.* at ¶¶ 18–19.)

Not wanting to lose the $65,000 equity he had accrued in his home, Plaintiff

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 11-02856 BRO (JCx) | Date | September 26, 2013 |
|---|---|---|---|
| Title | KWESI HUTCHFUL v. WELLS FARGO BANK, ET AL. | | |

contacted Defendant to seek a loan modification in December of 2008. (*Id.* at ¶ 21.) Around January 5, 2009, Plaintiff completed a loan modification form, including his credit information, and faxed it to Wells Fargo. (*Id.* at ¶ 22.) He contacted Wells Fargo six times in January 2009 to confirm the status of his application until Wells Fargo advised Plaintiff that he was "eligible" for a modified repayment plan and was pre-approved. (*Id.* at ¶¶ 24–27.)

Again, in February 2009, Wells Fargo told Plaintiff that he had been approved for a modified repayment plan. (*Id.* at ¶ 28.) His loan was to be reduced by $397.50 per month, his interest rate was to be reduced from 6.375% to 3.875%, and the loan was extended to 40, rather than 30, years. (*Id.*) Wells Fargo provided Plaintiff with a website address where he could track the progress of the modification agreement being prepared for his signature. (*Id.* at ¶ 30.)

On March 12, 2009, Wells Fargo told Plaintiff that his mortgage account would need to be escrowed for the promised loan modification, and Plaintiff agreed to this escrow. (*Id.* at ¶ 36.) On March 16, 2009, Wells Fargo asked Plaintiff to send updated financial information, as well as the number of days that had passed since he first submitted his loan modification form, to their negotiator. (*Id.* at ¶ 37.) Plaintiff did so. On or about June 14, 2009, Wells Fargo informed Plaintiff that his loan modification was cancelled. (*Id.* at ¶ 43.) In the four-month period beginning when Plaintiff was first told he had been approved for a modification and ending when the modification was cancelled, Plaintiff lost over $48,000 of equity in his home. (*Id.* at ¶ 45.)

On or about July 16, 2009, Plaintiff contacted Wells Fargo to inquire about applying for the federal Home Affordable Modification Program ("HAMP"). (*Id.* at ¶ 70.) On or about September 10, 2009, Wells Fargo advised Plaintiff that he had been approved for a HAMP modification and offered him a Trial Period Plan ("TPP"). (*Id.* at ¶ 77.) Wells Fargo orally represented to Plaintiff that if he complied with the terms of the plan, he would be offered a permanent HAMP modification. (*Id.*) In October, November, and December 2009, Plaintiff made the three monthly payments required under the TPP and provided Wells Fargo with all the documents it requested. (*Id.* at ¶¶ 84–86.) Wells Fargo did not, however, accurately record Plaintiff's payments on his account. (*Id.* at ¶ 103.) On or about January 28, 2010, Wells Fargo informed Plaintiff he had been approved for a HAMP modification. (*Id.* at ¶ 88.) On or about April 26, 2010,

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 11-02856 BRO (JCx) | Date | September 26, 2013 |
|---|---|---|---|
| Title | KWESI HUTCHFUL v. WELLS FARGO BANK, ET AL. | | |

Wells Fargo notified Plaintiff that he had been denied a HAMP modification. (*Id.* at ¶ 94.)

Plaintiff remained current on his loan through May 2010, but was unable to make his full monthly payment beginning in June 2010. (*Id.* at ¶ 95.) Plaintiff could have made the lowered payments that would have been allowed under either the promised in-house loan modification or the HAMP program. (*Id.*) By the time Wells Fargo retracted its HAMP modification promise, Plaintiff had lost the remaining equity in his home and lost the opportunity to pursue other significant and viable alternatives to save his home. (*Id.* at ¶ 97.)

When Plaintiff began to fall short on his payments, Wells Fargo accelerated his mortgage to foreclosure and did not inform him of its intent to record a notice of default on his property (*Id.* at ¶¶ 99, 101.) In July 2010, Wells Fargo began to report his account to the credit agencies as 90 days delinquent when it was in fact only 30 days late. (*Id.* at ¶ 104.) This severely affected Plaintiff's credit score and prevented him from pursuing other foreclosure prevention options. (*Id.* at ¶ 105.) On September 24, 2010, a notice of default was recorded on Plaintiff's property. (*Id.* at ¶ 106.) Wells Fargo did not contact Plaintiff to discuss any other available options. (*Id.*) On December 24, 2010, Plaintiff found out about the recorded default and the foreclosure proceedings for the first time when he found posted on his door a notice of trustee sale. (*Id.* at ¶ 107–08.) On or about March 6, 2011, Plaintiff received a copy of the notice of default accompanied by a signed affidavit attesting to Wells Fargo's due diligence in attempting to contact Plaintiff in September 2010. (*Id.* ¶ 438.)

On or about January 26, 2011, Plaintiff appealed to the Making Home Affordable Agency ("MHAA") for assistance. (*Id.* at ¶ 112.) The subsequent MHAA investigation found that Plaintiff should have been approved for a HAMP modification and that Wells Fargo violated the HAMP directives in failing to offer him a modification. (*Id.* at ¶ 114.) Between March 15 and April 5, 2011, Wells Fargo promised Plaintiff, orally and in writing, that it was postponing the foreclosure sale while it reviewed him for a HAMP modification. (*Id.* at ¶ 124.) On June 8, 2011, Wells Fargo conducted a foreclosure sale on Plaintiff's home. (*Id.* at ¶ 136.)

Plaintiff filed this lawsuit on April 7, 2011, alleging various federal and state law

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 11-02856 BRO (JCx) | Date | September 26, 2013 |
|---|---|---|---|
| Title | KWESI HUTCHFUL v. WELLS FARGO BANK, ET AL. | | |

claims. (Dkt. No. 7.)

## II. LEGAL STANDARD

A complaint may be dismissed for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Although the court must accept as true all of the factual allegations in a complaint, that principle "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Hence, a court may properly dismiss a complaint on a Rule 12(b)(6) motion when the plaintiff fails to plead facts that show its claims rise above the merely speculative level. *Twombly*, 550 U.S. at 555. To determine whether a complaint states a claim sufficient to withstand dismissal, a court considers the contents of the complaint and its attached exhibits. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-23 (2007). A court, moreover, may consider unattached documents the contents of which are alleged in a complaint and the authenticity of which no party questions. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). If one party introduces "all or part of a writing or recorded statement," the other party may introduce "any other part—or any other writing or recorded statement—that in fairness ought to be considered at the same time." Fed. R. Evid. § 106.

Where a motion to dismiss is granted, a district court should provide leave to amend unless it is clear that the complaint could not be saved by any amendment. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## III. DISCUSSION

Plaintiff's FAC alleges eight causes of action. The court will first address

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 11-02856 BRO (JCx) | Date | September 26, 2013 |
|---|---|---|---|
| Title | KWESI HUTCHFUL v. WELLS FARGO BANK, ET AL. | | |

Plaintiff's two federal claims before proceeding to the remaining state law claims.[1]

### A. Federal Claims

#### 1. Violation of RESPA

Plaintiff's sixth cause of action alleges that Defendant failed to comply with the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 (2012). Defendant argues that Plaintiff's RESPA claim fails because Plaintiff does not have a private right of action under § 2609 and did not allege any damages. For the following reasons, the Court agrees with Defendant.

RESPA, 12 U.S.C. § 2605(e)(1)(A), requires servicers of federally related mortgage loans that have received "a qualified written request from the borrower . . . for information relating to the servicing of such loan" to "provide a written response acknowledging receipt of the correspondence within 5 days . . . unless the action requested is taken within such period." A qualified written request is defined as:

> written correspondence . . . that (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and (ii) includes a statement of the reasons for the belief of the borrower . . . that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

§ 2605(e)(1)(B). Section 2605(f) provides that servicers that fail to comply with any provision of § 2605 are liable to the borrower for (1) actual damages resulting from the failure and (2) any additional damages up to $2,000 the court might allow in the event of a pattern of noncompliance. § 2605(f)(1)(A)–(B).

---

[1] Defendant also argues that all of Plaintiff's claims should be dismissed due to his failure to tender the loan deficiency. This argument is inapposite, however, because Plaintiff does not bring an action to set aside the foreclosure. *See Barrionuevo v. Chase Bank, N.A.*, 885 F. Supp. 2d 964, 969 (N.D. Cal. 2012) ("[T]he tender rule applies in an action to set aside a trustee's sale for irregularities in the sale notice or procedure . . . .") (quoting *FPCI RE-HAB 01 v. E & G Invs., Ltd.*, 207 Cal. App. 3d 1018, 1021 (1989)) (internal quotation marks omitted).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 11-02856 BRO (JCx) | Date | September 26, 2013 |
|---|---|---|---|
| Title | KWESI HUTCHFUL v. WELLS FARGO BANK, ET AL. | | |

The Court dismissed Plaintiff's RESPA claim in the third amended complaint because Plaintiff based his claim on 12 U.S.C. § 2609(c)(1)(B), and misread the statute as requiring an initial escrow statement 45 days *before* escrowing a borrower's account. The statute, in fact, requires the escrow statement to be issued within 45 days *after* the account is escrowed. In addition, the Court noted that § 2609 does not provide for a private right of action.

Plaintiff has amended his RESPA complaint in the FAC, but it fails again for several reasons—some new, some old. The FAC now nominally brings the action under § 2605. But Plaintiff still bases his claim on the language of § 2609(c)(1)(A)–(B), and again misstates that section as requiring initial escrow statements 45 days before an account is actually escrowed. On the other hand, Plaintiff does allege that he mailed a qualified written request to Defendant requesting the escrow notices required by § 2609(c)(1)–(2). Plaintiff also claims Defendant did not respond to the request. While these actions suggest a potentially viable action under § 2605, they are neither specific enough nor clear enough to constitute a proper action under that section. In order to cure these defects, Plaintiff should allege specific facts as to where the written request was sent, to whom the letter was sent, what the letter contained, and what, if any, response was received. Furthermore, Defendant correctly points out that Plaintiff has failed to claim any actual damages resulting from the failure to respond to the qualified written request. Plaintiff should specifically allege what harm he suffered as a result of Defendant's actions. These deficiencies, however, are not fatal. Defendant's motion to dismiss the RESPA claim is GRANTED with leave to amend.

### 2. Violation of FCRA

Plaintiff's seventh claim alleges violations of the Fair Credit Reporting Act. Defendant's motion to dismiss disputes Plaintiff's facts and argues that, even taken as true, they are insufficient to state a claim under the FCRA. For the following reasons, the Court disagrees with Defendant.

The FCRA imposes certain duties on credit reporting agencies, as well as those who provide credit information to credit reporting agencies ("furnishers"). *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009). The statute creates a private right of action for "willful or negligent noncompliance with its requirements."

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 11-02856 BRO (JCx) | Date | September 26, 2013 |
|---|---|---|---|
| Title | KWESI HUTCHFUL v. WELLS FARGO BANK, ET AL. | | |

*Gorman*, 584 F.3d at 1154. Nevertheless, the private right of action is limited to claims arising out of violations of § 1681s-2(b).[2] *Id.* The duties prescribed in § 1681s-2(b) are only imposed on the furnisher if it has received notice—from a credit reporting agency—that the consumer disputes the information. *Gorman*, 584 F.3d at 1154. Therefore, § 1681s-2(b) provides a private right of action only when: (1) the plaintiff informs the credit reporting agency ("CRA") of a dispute; (2) the agency informs the furnisher of the dispute; and (3) the furnisher fails to act in compliance with the statute. *Id.* Section 1681n(a)(1)(A)–(B) provides that those who willfully fail to comply with the FRCA will be liable for "(1) any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000; . . . [plus] (2) such amount of punitive damages as the court may allow." Additionally, in the event of a successful action to enforce liability under the FCRA, violators will also be responsible for "the costs of the action together with reasonable attorney's fees as determined by the court." § 1681n(a)(1)(A)–(B).

In his third amended complaint, Plaintiff's allegations amounted to a bare recital of the *Gorman* elements. The FAC, however, now claims that "[o]n or about August 10, 2010 and September 15, 2010, Hutchful disputed the inaccurate information with Transunion, Experian, and Equifax." (FAC ¶ 508.) It continues, "[o]n the same day, Transunion, Experian, and Equifax notified Wells Fargo of the dispute through their electronic communication system." (*Id.*) Plaintiff then alleges that Wells Fargo failed to investigate and correct the inaccurate information it had reported to the credit reporting agencies. These facts are sufficient to support a claim under FCRA. (*Id.* at ¶ 510.) They include specific dates, the credit reporting agencies involved, and how they communicated with Defendant. Accordingly, Defendant's motion to dismiss the FCRA claim is DENIED.

---

[2] Under § 1681s-2(b), after receiving notice that a consumer disputes reported credit information, a furnisher must (1) investigate the claim, (2) review the relevant information provided by the credit reporting agency ("CRA"), (3) report the outcome of its investigation to the CRA, (4) if the information is indeed incomplete or inaccurate, inform all other CRAs of the inaccuracy, and (5) discontinue providing the inaccurate information to CRAs. 15 U.S.C. § 1681s-2(b) (2012).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 11-02856 BRO (JCx) | Date | September 26, 2013 |
|---|---|---|---|
| Title | KWESI HUTCHFUL v. WELLS FARGO BANK, ET AL. | | |

### B. State Law Claims

The Court did not reach Plaintiff's state law claims in its order addressing Defendant's motion to dismiss the TAC because that complaint was stripped of jurisdiction after Plaintiff's three federal claims were found wanting. Here, Plaintiff has properly pled diversity jurisdiction under 28 U.S.C. 1332(a). The Court, therefore, addresses the FAC's state law claims in turn.[3]

### 1. Promissory Estoppel

In his first cause of action, Plaintiff alleges three counts of promissory estoppel against Defendant. Defendant moves to dismiss each count arguing Plaintiff has alleged facts that are either proven false by his own exhibits or insufficiently detailed to support his claims as a matter of law. For the following reasons, the Court disagrees with Defendant.

The doctrine of promissory estoppel allows a party to enforce a contractual relationship that would otherwise fail for lack of consideration. *Yari v. Producers Guild of Am., Inc.*, 161 Cal. App. 4th 172, 181–182 (2008). "The elements of a promissory estoppel claim are (1) a promise clear and unambiguous in its terms; (2) reliance by the party to whom the promise is made; (3) [the] reliance must be both reasonable and foreseeable; and (4) the party asserting the estoppel must be injured by his reliance." *Advanced Choices, Inc. v. Dep't of Health Servs*, 182 Cal. App. 4th 1661, 1672 (2005) (internal quotation marks omitted).

#### i. Promise of In-House Modification

In his first count, Plaintiff claims he relied on Defendant's promise of an "in-house" modification, and suffered injury as a result. Defendant argues that Plaintiff has failed "to demonstrate a clear and unambiguous promise" of approval for Plaintiff's loan modification. This misstates the law. Plaintiff is not required to prove his facts in the complaint. He is required only to allege facts that are sufficient to state a claim for relief

---

[3] As explained above, Plaintiff has also cured his federal FCRA claim, so the Court also has federal question jurisdiction under 28 U.S.C. § 1331 (2012).

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 11-02856 BRO (JCx) | Date | September 26, 2013 |
|---|---|---|---|
| Title | KWESI HUTCHFUL v. WELLS FARGO BANK, ET AL. | | |

that is plausible on its face and that is not overly speculative or vague. Plaintiff has met that burden here.

According to the FAC, Defendant approved a reduced interest rate of 3.875% and an extended loan term of 40 years. Defendant argues that the modification application was still under review, and points to Plaintiff's Exhibit A as proof. Exhibit A is an image of the website page made available to Plaintiff to monitor the status of his application. Defendant highlights a statement on the print out which says the application was still being reviewed to determine whether "a workout agreement" would be possible. Defendant, however, ignores the fact that the same print out also includes a status overview chart which lists the review process as "completed" and "preparation of the modification agreement" as "in process." Plaintiff, moreover, does not rely solely on Exhibit A to state his claim; he also alleges Defendant gave repeated oral assurances of his approval for a modification. The oral assurances, by themselves, would have been sufficient for 12(b)(6) purposes.

Defendant argues that Plaintiff's reliance on the "in-house" modification promise was unreasonable because he was still being asked to provide documents and this should have alerted him to the fact that the modification was not yet guaranteed. Nevertheless, the Court fails to see how being asked to provide further documents should have alerted Plaintiff not to rely on Defendant's repeated oral and electronic assurances. Indeed, it would seem reasonable to interpret the document request as being required to prepare the modification agreement.

Finally, Defendant argues Plaintiff has not claimed any injury because his account was not in default when the modification was denied. Plaintiff's claimed injury, however, is not the default or the foreclosure sale; it is the loss of equity in his home during the several month interim between the promised modification and its eventual denial. Plaintiff claims he would have sold his home or sought another modification through other available programs. This is sufficient injury to support a claim for promissory estoppel.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 11-02856 BRO (JCx) | Date | September 26, 2013 |
|---|---|---|---|
| Title | KWESI HUTCHFUL v. WELLS FARGO BANK, ET AL. | | |

*ii. Promise of a HAMP Modification*

In Plaintiff's second promissory estoppel claim, he alleges that Defendant promised him another modification through the federal HAMP program. Defendant attacks this claim by asserting that Plaintiff actually rejected the terms of the HAMP Trial Period Plan ("TPP"). If true, this would negate Plaintiff's claim of reliance on Defendant's HAMP modification promise. Without reliance, Plaintiff's promissory estoppel claim would fail as a matter of law. Defendant also argues that because Plaintiff introduced an excerpt of the Wells Fargo loss mitigation notes associated with his account as evidence of Defendant's HAMP promise,[4] it is permitted to introduce other sections of the same notes to rebut Plaintiff's allegations.[5] Defendant's Request for Judicial Notice ("RJN"), (Dkt. No. 130), thus, includes additional portions of the loss mitigation notes as proof that Plaintiff did not accept the HAMP TPP. The Court reviewed both submissions, and finds that Defendant's RJN, Exhibit 2, does not unequivocally support Defendant's contention that Plaintiff rejected the HAMP TPP.[6]

Alternatively, Defendant argues that the HAMP TPP was only the first step in the modification process, and not a guarantee of a permanent modification. Defendant's RJN

---

[4] Plaintiff's Exhibit F shows the account notes stating that Defendant approved a HAMP modification in September 2009 at 3.25 % interest and with a term of 332 months.

[5] Plaintiff objected to Defendant's Request for Judicial Notice of other portions of the loss mitigation notes. (Dkt. No. 132). Plaintiff's arguments, however, fail for a number of reasons not least of which is they relied significantly on California evidence and procedure rules—this Court is bound by the Federal rules. Moreover, as Plaintiff introduced a portion of the notes to support his contract claim regarding the HAMP TPP, he necessarily attested to their veracity and brought the notes within the complaint. *See Branch v. Tunnell,* 14 F.3d 449, 453–54 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002). As a result, Defendant is permitted to introduce other parts of the notes in its motion attacking the pleadings without converting it into a motion for summary judgment. *See id.* at 454.

[6] If anything, the notes actually support *Plaintiff*'s claim. They show that Defendant miscalculated the HAMP payments and when Plaintiff raised the issue, Defendant advised Plaintiff not to sign the TPP until it was corrected. (RJN, Ex. 2, at 34.) Indeed, the notes even suggest it was not necessary for Plaintiff to sign the amended agreement as he had made the three payments required by the TPP. (*Id.* at 33–34.)

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 11-02856 BRO (JCx) | Date | September 26, 2013 |
|---|---|---|---|
| Title | KWESI HUTCHFUL v. WELLS FARGO BANK, ET AL. | | |

introduces as "Exhibit 8" HAMP Directive 9-01, which purportedly allows HAMP servicers to deny a borrower for a modification even after the TPP payments are made.[7] This argument fails as well because Plaintiff alleges that Defendant definitively approved the HAMP modification. Whether Defendant retained the right to deny the modification after doing so is irrelevant because Plaintiff claims he relied on the promise to his detriment. Whether Defendant did indeed have the right to deny the modification, or whether Plaintiff should have realized it, are factual determinations, which the Court will not decide here.

Finally, Defendant argues that Plaintiff has not alleged an actionable detriment because the payments under the TPP were already owed under the existing mortgage. This is not what Plaintiff alleges as his injury. Plaintiff claims that he lost the opportunity to pursue other refinance or modification options because Defendant's policy only permitted him to apply for one at a time. He claims that these lost opportunities led to his default, credit injury, and the eventual foreclosure. Therefore, Plaintiff has met his damages claim burden.

### iii. Promise to Postpone Foreclosure Sale

In Plaintiff's third promissory estoppel claim, he alleges that Defendant promised to postpone foreclosure proceedings on his home while it conducted another HAMP modification review. Defendant seeks to dismiss this claim, arguing Plaintiff's claims are speculative and vague: they are not. Plaintiff alleges specific oral and written promises by Defendant to postpone the foreclosure sale. (FAC ¶¶ 210, 212–13.) Plaintiff reasonably relied on these assurances by not seeking other opportunities that could have allowed him to keep his home or at least recoup some of the equity he had accumulated therein.

For the foregoing reasons, Defendant's motion to dismiss Plaintiff's promissory estoppel claim is DENIED as to all counts.

---

[7] The HAMP Directive 9-01 is actually "Exhibit 9."

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 11-02856 BRO (JCx) | Date | September 26, 2013 |
|---|---|---|---|
| Title | KWESI HUTCHFUL v. WELLS FARGO BANK, ET AL. | | |

### 2. Breach of Contract and Breach of the Implied Covenant of Good Faith and Fair Dealing

In his second and fourth claims, Plaintiff alleges breach of contract and breach of the implied covenant of good faith and fair dealing, respectively. Given the interrelated nature of contract terms and the implied covenant of good faith and fair dealing, the Court will consider Plaintiff's second and fourth causes of action together. Plaintiff alleges three counts of both breach of contract and breach of the implied covenant of good faith and fair dealing. The three counts in both causes of action relate to the same three agreements: (1) the HAMP TPP; (2) the HAMP Servicer Participation Agreement ("SPA"); and (3) the deed of trust governing Plaintiff's mortgage. Defendant moves to dismiss all counts, arguing (1) the TPP was not a contract and Plaintiff did not agree to it; (2) there is no private cause of action under the HAMP SPA; and (3) the action alleged by Plaintiff was not a breach of the deed of trust's terms. For the following reasons, the Court agrees with Defendant regarding the HAMP TPP and SPA, but disagrees on the other count.

Under California law, "the elements of a cause of action for breach of contract are (1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011) (citing *Reichert v. Gen. Ins. Co.*, 68 Cal.2d 822, 830 (1968)). In every contract, "[t]here is an implied covenant of good faith and fair dealing . . . that neither party will do anything which will injure the right of the other to receive the benefits of the agreement." *Comunale v. Traders & Gen. Ins. Co.* 50 Cal. 2d 654, 658 (1958) (citation omitted.) The existence of the implied covenant, therefore, requires the existence of some specific contractual obligation. *Racine & Laramie, Ltd. v. Dep't of Parks & Recreation*, 11 Cal. App. 4th 1026, 1031 (1992). "The covenant of good faith is read into contracts in order to protect the express covenants or promises of the contract, not to protect some general public policy interest not directly tied to the contract's purpose." *Id.* (quoting *Foley v. Interactive Data Corp.* 47 Cal.3d 654, 690 (1988)) (internal quotation marks omitted). In other words the covenant supplements the express contractual terms "to prevent a contracting party from engaging in conduct which (while not technically transgressing the express covenants) frustrates the other party's rights to the benefits of the contract." *Id.* (quoting *Love v. Fire Ins. Exch.*, 221 Cal. App. 3d 1136, 1153 (1990)) (internal quotation marks omitted).

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 11-02856 BRO (JCx) | Date | September 26, 2013 |
|---|---|---|---|
| Title | KWESI HUTCHFUL v. WELLS FARGO BANK, ET AL. | | |

"The issue of whether the implied covenant of good faith and fair dealing has been breached is ordinarily a question of fact unless only one inference [can] be drawn from the evidence." *Hicks v. E.T. Legg & Assocs*, 89 Cal. App. 4th 496, 509, (2001) (internal quotation marks omitted).

### i. Breach of the TPP Agreement

Plaintiff first alleges that Defendant breached the terms of the TPP when it did not offer him a HAMP modification. Defendant attacks this claim by arguing that the TPP was not a contract to modify Plaintiff's loan. Even if it was, Defendant maintains, Plaintiff did not accept the offer as evidenced by his payment of the regular amount instead of the reduced amount. Finally, Defendant contends that even if the TPP is a contract, and Plaintiff did fully perform, the payments are not consideration because they were already owed under the original loan agreement.

The Court must first determine whether the TPP was a valid contract as a matter of law. In Exhibit G, Plaintiff provides a copy of the TPP bearing his signature as evidence of the contract's existence. This document, however, fails to accomplish its purpose. The TPP explicitly states in its second paragraph, "I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of the Plan *if* I qualify for the Offer." (Exhibits A–H, Ex. G, at 77 (emphasis added).) As such, it makes clear that it is conditioning the formation of the contract on its future action. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 561 (7th Cir. 2012) (quoting 1 Joseph M. Perillo, *Corbin on Contracts* § 1.11, at 31 (rev. ed. 1993)) ("[W]hen some further act of the purported offeror is necessary, the purported offeree has no power to create contractual relations, and there is as yet no operative offer." (internal quotation marks omitted)). This condition is repeated later in the TPP, as well, in section 2(F): "If . . . the Lender does not provide me a fully executed copy of this Plan and the Modification agreement . . . the Loan Documents will not be modified and this Plan will terminate."

Plaintiff argues that the TPP's first paragraph, and the first part of section 3, both state clearly that if he complies with "this Loan Trial Period and my representations in section 1 continue to be true in all material respects, then the Lender will provide me with a Loan Modification Agreement." The "Loan Trial Period" however, *is* section 2 of the agreement, and requires that the borrower receive an executed copy of the Plan and the

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 11-02856 BRO (JCx) | Date | September 26, 2013 |
|---|---|---|---|
| Title | KWESI HUTCHFUL v. WELLS FARGO BANK, ET AL. | | |

Modification Agreement. Plaintiff has not alleged that Defendant sent him an executed copy of the Plan or the Modification agreement, nor has he included either as exhibit. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 561–63 (7th Cir. 2012) (concluding that the TPP only became effective when Wells Fargo signed the Plan and returned it to Wigod). Thus, Count I fails to plead the existence of a contract. Defendant's motion to dismiss is GRANTED with leave to amend.[8] Plaintiff needs to allege a contract. As there can be no breach of the covenant of good faith and fair dealing without the existence of a contract, Defendant's motion as to Count I of Plaintiff's fourth cause is also GRANTED with leave to amend.

### ii. Breach of the HAMP SPA

In Plaintiff's second contract claim, he alleges Defendant violated the terms of its SPA agreement with the United States Treasury. Plaintiff asserts that he can enforce the contract as an intentional third-party beneficiary. Defendant counters that Plaintiff is an incidental third-party beneficiary, and is consequently barred from intervening.

This issue has been addressed in other district courts, the great majority of which have held that third-party borrowers are incidental beneficiaries. In *Marques v. Wells Fargo Home Mortg., Inc.*, however, the court found otherwise. *See* No. 09-1985, 2010 WL 3212131 (S.D. Cal. Aug. 12, 2010). *Marques* held that the SPA (1) clearly directed signatories to modify loans according to specific criteria, and (2) explained in detail the compensation for signatories, investors and borrowers. *Id.*, at *6. Based on this, the court concluded "it is difficult to discern any substantial purpose other than to provide loan modification services to eligible borrowers." *Id.*

However, the *Marques* holding has been persuasively rebutted.[9] In *Ahmad v. Wells Fargo Bank, NA*, the court pointed out that "'[i]n the context of government contracts,

---

[8] The court grants Plaintiff leave to amend in the event that he did receive an executed copy of the TPP and the Loan Modification Agreement. Plaintiff is advised, however, that absent these, his claim will fail.

[9] The Court also notes that the *Marques* holding draws extensively from Ninth Circuit's holding in *Cnty. of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1244 (9th Cir. 2009), *rev'd sub nom.*, *Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 131 S. Ct. 1342 (U.S. 2011). The Supreme Court subsequently reversed the *Astra* case.

Case 2:11-cv-02856-BRO-JC   Document 137   Filed 09/26/13   Page 15 of 19   Page ID #:3097

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 11-02856 BRO (JCx) | Date | September 26, 2013 |
|---|---|---|---|
| Title | KWESI HUTCHFUL v. WELLS FARGO BANK, ET AL. | | |

such as HAMP, there is a presumption that any beneficiaries are only incidental beneficiaries.'" 861 F. Supp. 2d 818, 829 (E.D. Mich. 2012) (quoting *Nafso v. Wells Fargo Bank, NA*, 11-10478, 2011 WL 1575372, at *4 (E.D. Mich. Apr. 26, 2011). Government contracts must therefore include clear intent to the contrary in order to overcome this presumption against enforcement by third party beneficiaries. *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir. 1999), *opinion amended on denial of reh'g*, 203 F.3d 1175 (9th Cir. 2000). *Ahmad*, *Nafso* and others found that HAMP SPA agreements did not include this clear intent. The same is true here.

For example, the HAMP SPA agreement, introduced as Plaintiff's Exhibit B, simply does not evidence this clear intention. The *Klamath* holding is instructive on this point. In that case, a water users association and other irrigators sought to enforce a contract between the United States Bureau of Reclamation and an operator governing the management of a dam. They pointed to sections of the contract that showed they were among the intended beneficiaries of the contract. The Ninth Circuit disagreed, however, because the referenced sections did not explicitly give third-party beneficiaries a right to enforce the contract. Demonstrating that one was a beneficiary of a government contract was not enough to confer intended beneficiary status; the contract had to actually spell out third-party enforcement rights. Like the contract in *Klamath*, the HAMP SPA agreement in this case does not spell-out any third party enforcement rights. Accordingly, Defendant's motion to dismiss Count II of Plaintiff's contract claim, and its associated count for breach of the covenant of good faith and fair dealing, **is GRANTED with prejudice**.

### iii. Breach of the Deed of Trust (Loan Agreement)

Plaintiff's third contract claim alleges Defendant breached the terms of the Loan Agreement by failing to properly apply his payments to his account. Defendant argues this claim should be dismissed because Plaintiff's account was in default at the time of its alleged accounting failure and the terms of the deed clearly state it was under no obligation to apply payments that were insufficient to cure the default. The Court does not agree.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 11-02856 BRO (JCx) | Date | September 26, 2013 |
|---|---|---|---|
| Title | KWESI HUTCHFUL v. WELLS FARGO BANK, ET AL. | | |

     In his complaint, Plaintiff points to Section 2 of the deed of trust which states that "all payments accepted and applied by the lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due [as escrow funds]." (FAC ¶ 311; Ex. L, at 16.) Defendant counters that Section 1 states that the "Lender is not obligated to apply [partial] payments at the time such payments are received. . . . [and] may hold such unapplied funds until Borrower makes payment to bring the Loan current." (Mot. 19.) Defendant argues that because Plaintiff admits he was in default at the time he alleges the funds were not applied—June 6, 2010—it was under no obligation per the terms of the deed of trust to apply the payments. (*Id.*) This, however, is not what Plaintiff alleges. Plaintiff claims that Defendant began not applying his payments in December 2009 and that the loan was current through May 2010. Defendant's dispute is clearly a factual one and the Court will not entertain it here. Defendant's motion to dismiss Plaintiff's third breach of contract count is consequently DENIED.

     As Plaintiff's third contract claim is properly pled, the Court addresses his accompanying claim for breach of the covenant of good faith and fair dealing. The FAC states that "in all its actions . . . Wells Fargo engaged in fraudulent and deceptive practices" that interfered with Plaintiff's right to receive the benefits of their agreements. Plaintiff later includes in these actions Defendant's alleged failure to post his payments on his account resulting in injury to his credit score and an inflated delinquency when he eventually did default on his payments. Plaintiff has alleged the existence of a contract, that Defendant acted in bad faith in order to interfere with his rights under the contract and that he suffered injury as a result. Accordingly, Defendant's motion to dismiss Count III of Plaintiff's fourth cause of action is DENIED.

### 3. Breach of Implied-in-Fact Contract

     Plaintiff's third cause of action alleges Defendant breached an implied-in-fact contract when it failed to offer him a loan modification agreement after he complied with his obligation under the TPP. Defendant has not offered any specific arguments against this claim, but as it has moved to dismiss all Plaintiff's claims, the Court will address it now.

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 11-02856 BRO (JCx) | Date | September 26, 2013 |
|---|---|---|---|
| Title | KWESI HUTCHFUL v. WELLS FARGO BANK, ET AL. | | |

A contract can be either express or implied. Cal. Civ. Code § 1619. An implied-in-fact contract "consists of obligations arising from a mutual agreement and intent to promise where the agreement and promise have not been expressed in words." *Retired Emps. Ass'n of Orange Cnty., Inc. v. Cnty. of Orange*, 52 Cal. 4th 1171, 1178 (2011) (quoting *Silva v. Providence Hosp. of Oakland*, 14 Cal. 2d 762, 773 (1939)) (quotation marks omitted). In situations where a written contract exists, "[e]vidence derived from experience and practice can now trigger the incorporation of additional, implied terms." *Id.* (quoting *Scott v. Pac. Gas & Elec. Co.*, 11 Cal. 4th 454, 463 (1995)) (quotation marks omitted). Moreover, while "[i]mplied contractual terms ordinarily stand on equal footing with express terms," *id.*, generally speaking "implied terms should never be read to vary express terms." *Id.* (quoting *Carma Developers (Cal.), Inc. v. Marathon Dev. Cal., Inc.*, 2 Cal. 4th 342, 374 (1992)).

The Court has determined above that the TPP was not a contract because Plaintiff did not receive a signed and executed copy of the Plan or Modification Agreement. Nevertheless, the express terms of the TPP do not bar Plaintiff's attempt to bring an action based on the existence of an *implied* contract between the parties. The FAC properly alleges conduct that could be interpreted as giving rise to an implied contract. It also alleges Plaintiff's full performance under the implied terms and Defendant's subsequent breach. Finally, Plaintiff pleads damages resulting from the breach. He has met his burden as a matter of law and, as a result, Defendant's motion to dismiss is DENIED as to this claim.

### 4.  Fraudulent Misrepresentation

Plaintiff's fifth cause of action alleges four counts of fraudulent misrepresentation against Defendant. The first, second, and fourth involve now familiar subject matter: (1) the in-home modification promise; (2) the HAMP modification promise; and (3) the promise to postpone the foreclosure sale. The third count alleges Defendant falsely declared that it exercised due diligence to inform Plaintiff of the notice of default in compliance with Cal. Civ. Code § 2923.5(g)(2). Defendant moves to dismiss each count arguing Plaintiff has not, and cannot, allege sufficient facts to demonstrate (1) a known misrepresentation of a material fact, (2) intent to deceive, (3) reliance, or (4) damages. For the following reasons, Defendant's arguments fail.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 11-02856 BRO (JCx) | Date | September 26, 2013 |
|---|---|---|---|
| Title | KWESI HUTCHFUL v. WELLS FARGO BANK, ET AL. | | |

A valid claim for fraud must allege "(1) misrepresentation of a material fact (consisting of false representation, concealment or nondisclosure); (2) knowledge of falsity (scienter); (3) intent to deceive and induce reliance; (4) justifiable reliance on the misrepresentation; and (5) resulting damage." *Bower v. AT & T Mobility, LLC*, 196 Cal. App. 4th 1545, 1557 (2011).  The heightened pleading requirements of Rule 9(b) oblige parties to state the circumstances constituting the fraud with particularity.  Fed. R. Civ. P. 9(b).  Plaintiffs must assert the "who, what, when, where, and how" of the charged misconduct.  *Vess v. Ciba-Geigy Co., U.S.A.*, 317 F.3d 1097, 1106 (9th Cir. 2003).

In Counts I, II, and IV, Plaintiff has properly stated claims for fraudulent misrepresentation.  Defendant's protestations to the contrary are unconvincing.  Defendant argues that Plaintiff failed to identify the individuals who made the fraudulent misrepresentations.  In Counts I and II, Plaintiff alleges nameless Wells Fargo representatives made the false statements over the phone and that he aims to retrieve their full names through discovery.  As the rest of the elements are specifically pled, the Court will not dismiss these claims because Plaintiff does not yet have the representatives' full names.

In Count IV, Plaintiff specifically names the Wells Fargo employee alleged to have made the false statement, so Defendant's argument clearly fails as to that claim.  Defendant also argues that Plaintiff's "claim for negligent misrepresentation" fails because Defendant is not liable to Plaintiff for negligent misrepresentation.  Defendant might have been on to something were the Court still addressing the third amended complaint.  The FAC, however, does not include a claim for negligent misrepresentation.

Defendant's argument against Plaintiff's Count III, however, has decidedly more traction.  Plaintiff claims that Mr. John Kennert's affidavit averring that Wells Fargo diligently attempted to contact him with notice of his default is knowingly false.  (FAC ¶ 450–52.)  Plaintiff claims he was not even aware of the September 2010 affidavit until March 2011.  And when Plaintiff did encounter the statement, he immediately believed it to be false.  Plaintiff has not explained how he relied on Mr. Kennert's allegedly false representation and suffered damages as result.

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

| Case No. | CV 11-02856 BRO (JCx) | Date | September 26, 2013 |
|---|---|---|---|
| Title | KWESI HUTCHFUL v. WELLS FARGO BANK, ET AL. | | |

Accordingly, Defendant's motion as to Counts I, II and IV of Plaintiffs action for fraudulent misrepresentation is DENIED. The motion to dismiss Count III is GRANTED with leave to amend.

### 5. California Business and Professions Code § 17200

In Plaintiff's eighth claim, he alleges violations of California Business and Professions Code ("CBPC") section 17200. Section 17200 prohibits any unlawful, unfair, or fraudulent business acts or practices. By proscribing "unlawful" acts or practices, section 17200 provides an independent right of recovery for violations of other laws. Section 17200 thus provides another avenue of recovery for victims of such practices. *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).

To the extent Plaintiff's section 17200 counts are based on claims that have been dismissed above, Defendant's motion to dismiss is GRANTED with leave to amend. Defendant's motion is DENIED as to all other section 17200 counts.

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss as to (1) the RESPA claim, (2) Count I of both the breach of contract and breach of the implied covenant of good faith and fair dealing claims, (3) Count III of the fraudulent misrepresentation claim, and (4) any California Business & Professions Code § 17200 counts based on these claims is GRANTED with leave to amend. **The amended complaint should be filed no later than October 18, 2013.**

Defendant's motion to dismiss Count II of both Plaintiff's breach of contract claim and his breach of the implied covenant of good faith and fair dealing claim is **GRANTED with prejudice**. The motion is DENIED in all other respects.

**IT IS SO ORDERED.**

|  | : |
|---|---|
| Initials of Preparer | rf |